UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KENNETH HORN,

                              Petitioner,

        v.                                                      **DECISION AND ORDER**
                                                                03-CV-240S

VICTOR HERBERT,

                              Respondent.


## I. INTRODUCTION

Petitioner Kenneth Horn filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction on charges of depraved indifference murder, felony murder, and burglary in New York State Supreme Court, Monroe County.  Petitioner contends that his conviction was imposed in violation of his federal constitutional rights and should be vacated.  For the following reasons, Kenneth Horn's Petition must be denied.


## II. BACKGROUND

Sometime between May 25, and May 28, 1996, 22-year old Rusty Berger, a homeless man who was living in an abandoned van in the fenced salvage yard of Metter's Auto Parts on Clinton Avenue in the City of Rochester, was stabbed in the head during a robbery.[1]  Employees discovered Mr. Berger on the morning of May 28, after Memorial Day weekend, semiconscious and bleeding from his head, laying inside the van, wrapped in

---

[1]Mr. Berger apparently performed odd jobs for Samuel Geraci, the owner of Metter's Auto Parts.

blankets.  Nearly all of the windows of the van were smashed.  Blood was evident on the exterior and interior of the van, and on the windows.  Several car radiators were missing from the business.  Police and an ambulance were summoned to the scene, and Mr. Berger was transported to Rochester General Hospital for emergency treatment.  Some three days later, on May 31, 1996, Mr. Berger died from the injuries he sustained to his brain.

An autopsy of Mr. Berger was performed the same day by Dr. Kim J. Panosian, a forensic pathologist.  Dr. Panosian took a blood sample from the victim and submitted it to the Public Safety Laboratory.  She conducted an external examination of the victim's body and found a small puncture type wound, approximately six millimeters in length and one millimeter in width, in his right temple region.  An examination of the skull and brain revealed an oval-type defect or fracture of the skull just beneath the puncture wound, a hairline fracture of the skull, a hemorrhage or bleeding on the brain, and a penetration wound to the brain that was four and a quarter inches long with a variable width, approximately one inch wide at its greatest point.[2]  Based on her findings, Dr. Panosian opined that Mr. Berger died as a result of a penetrating head injury.

The van in which the victim was discovered, a red, early-model Dodge, was towed and secured in a caged area of the Public Safety Building garage.  There, a technician photographed the van, took numerous samples of suspected blood stains from the van's exterior, collected pieces of plexiglass with dry droplets of suspected blood from the van's interior and its windows, and removed the gaskets that secured the windows to the van.

---

[2]At trial, Dr. Panosian asserted that the victim's injuries were consistent with a screwdriver being driven into the brain.  (T. at 572).  To explain the variable width of the wound, Dr. Panosian explained, "[i]t is my feeling that if the screwdriver was forced into the brain it could then be easily moved back and forth to create a track of different widths."  (T. at 573).

The technician attempted, but was unable to lift any prints from the van that were capable of being identified.

Apparently, it was not until May of 1998, approximately two years after Mr. Berger's murder, that the police finally developed a lead in the case.  At that time, Edward Luther, who was then engaged to Kenneth Horn's sister, Kathleen Horn, contacted the police about two conversations he had overheard that implicated Kenneth Horn in Mr. Berger's murder in May of 1996:  one conversation between Kenneth Horn and a man known to Mr. Luther as Anthony, "Shorty," or "Heavy," and another between Kenneth Horn and his brother, Keith Horn.  Specifically, in June of 1996, Mr. Luther overheard Kenneth Horn talking to Anthony about how he and his brother Keith "went to the junkyard to get some things," were confronted and "got into a fight."  (T. at 597).  According to Mr. Luther, Kenneth Horn told Anthony that the brothers went into the junkyard, where they were discovered by a man, that they chased the man, beat him up, and that Keith Horn "stuck him in the head with a screwdriver."  (T. at 598-99).  In June of 1997, Mr. Luther overheard Kenneth and Keith Horn talking about the fight they got into Metter's Auto Parts, how Kenneth had beat up the victim, and how when Keith struck the victim in the head with the screwdriver, "it went in like butter."  (T. at 605).

Armed with this information, Sergeant John Gropp and Detective Vito D'Ambrosia, 30-plus year veterans of the Rochester Police Department assigned at that time to the "cold case" squad, brought Kenneth and Keith Horn in for questioning on June 16, 1998.  Both suspects agreed to give blood samples, which were taken that day.  Approximately two weeks later, on June 30, 1998, the officers questioned Kenneth Horn again, this time advising him that the blood analysis linked him and his brother Keith to unspecified crimes

that occurred at Metter's Auto Parts.   According to Sergeant Gropp, Petitioner responded "I have never been to Metter's, I didn't stab anybody there and you didn't get my blood there." (T. at 646).  The officers denied telling Kenneth Horn at any time that the victim had been stabbed.

In July of 1999, Kenneth Horn's older brother, Kevin Horn, contacted the police regarding a conversation he had with Keith and Kenneth on Memorial Day weekend in 1996, the weekend that Mr. Berger was fatally injured.  During this conversation, Kenneth told his older brother that he and Keith robbed a garage one night  that weekend, that they fought with a man who confronted them, that Keith stabbed the man during the altercation causing him to fall to the ground, that they picked the man up, put him in the back of the van, and covered him up.  (T. at 737, 744-45, 748, 751).  Initially Kevin Horn did not believe his brothers' story, but decided to call the police when his wife saw a story about the incident at Metter's Auto Parts on the news three years later.

Kenneth Horn was indicted on four counts, intentional murder, depraved indifference murder, felony murder, and Burglary in the Third Degree, and charged as both a principle and an accomplice to his brother, Keith Horn.  Kenneth Horn was tried before a jury in New York State Supreme Court, Monroe County.   Numerous witnesses testified for the prosecution, including Mr. Luther and Kevin Horn, who related the conversations that they had been a part of or overheard regarding Kenneth Horn's involvement in Mr. Berger's death.

At trial, the parties stipulated in writing to the following facts regarding the physical evidence: the rubber gaskets, plexiglass, and petri dishes containing the red-brown material found on the exterior and interior of the van, one tube of Rusty Berger's blood, two

tubes of Keith Horn's blood, and two tubes of Kenneth Horn's blood were submitted in a sealed and undisturbed condition to the Public Safety Laboratory.  (T. at 724-26).  Further, an analysis of these material revealed that:  (1) the red-brown stains and materials from various locations on the van were human blood with similar blood enzyme characteristics; (2) Mr. Berger's blood had blood enzyme characteristics dissimilar to those of the stains and materials; (3) neither Keith Horn nor Kenneth Horn could be eliminated as possible donors of the blood recovered from the van; (4) that the combination of the enzyme forms detected from the blood evidence and the blood of Keith and Kenneth Horn occurs in approximately less that one percent of the Caucasian population; (5) that the DNA extracted from the plexiglass is consistent with the DNA profile developed in the DNA extracted from Keith Horn's blood and is inconsistent with the DNA profile of Kenneth Horn and Mr. Berger; and (6) that the possibility of randomly selecting an unrelated individual's blood with the same DNA profile as Keith Horn is approximately one in 119,000,000 Caucasians.  (T. at 725-28).

As the sole witness for the defense, Keith Horn testified that he committed the burglary at Metter's Auto Parts on his own without any help from Kenneth Horn.  (T. at 816).  According to his testimony, Keith Horn, who was 5 foot, 7 inches tall and weighed approximately 135 pounds at the time of the burglary, struggled with the 6-foot, 180-pound victim, who was armed with a pipe, before he "stuck [the victim] with the screwdriver," causing him to fall back into the van.  (T. at 335, 790, 793).  Keith Horn further testified that he pulled the victim back inside the van and "busted some of the windows," because he "couldn't believe what had happened."  (T. at 800).[3]  On cross examination, the district

---

[3]Keith Horn subsequently pled guilty to the murder of Rusty Berger.

attorney questioned Keith Horn about three prior burglaries that he had committed with the assistance of other persons.  (T. at 815).  The prosecutor asked, "[w]hen you commit burglaries you don't work alone, you always have help, isn't that true?," to which Keith Horn responded, "[y]es, that's true." (T. at 816).

Prior to the trial, Judge Dennis F. Bender advised the jurors, "there [are] three counts of Murder in the Second Degree, but there is only one death.  If there is any confusion, they are different theories presented by the People." (T. at 354).  After the close of evidence, Judge Bender charged the jury regarding the specific elements of the charged crimes of intentional murder, depraved indifference murder, felony murder and Burglary in the Third Degree.[4]  During deliberations, the jurors requested, among other things, to hear the direct and cross examination of Mr. Luther regarding the conversations he overheard, to hear Kevin Horn's testimony regarding the conversation between his brothers, to be re-charged on the three different counts of Murder in the Second Degree, and to have the term "intentionally aids" as it relates to accomplice liability defined.  (T. at 924, 930-31, 956, 973).

The jury returned a verdict convicting Kenneth Horn of depraved indifference murder, felony murder, and Burglary in the Third Degree as charged in the indictment. They did not convict him of the intentional murder of Mr. Berger.  Kenneth Horn was

---

[4]With respect to the charges of intentional murder and depraved indifference murder, Judge Bender further charged:

[A] person's actions cannot be both intentional and reckless of the same conduct.  Thus, if you find that the relevant evidence proves the defendant guilty beyond a reasonable doubt of the first count of intentional murder, you must find him not guilty of the second count.  Conversely, if you find him guilty of the second count, you must find him not guilty of the first.  In other words, the defendant may be found guilty of the first count or the second count, but not both.

(T. at 905).

sentenced to an indeterminate sentence of 20 years to life on each murder count, to be served concurrently, and to an indeterminate sentence of 2 -1/3 to seven years on the burglary charge.   The Appellate Division, Fourth Department, of the New York State Supreme Court, unanimously affirmed the conviction on June 8, 2001.  On December 17, 2001, the New York Court of Appeals denied leave to appeal.

On March 27, 2003, Kenneth Horn filed the instant Petition for Writ of Habeas Corpus in the United States District Court for the Western District of New York.[5]   The Petition asserts four grounds for relief:  (1) the evidence was legally insufficient to prove Petitioner guilty of Murder in the Second Degree; (2) the trial court erred in failing to declare a mistrial based on Mr. Luther's improper testimony; (3) the verdict was against the manifest weight of the evidence; and (4) the sentences for Murder in the Second Degree were harsh and excessive.  For the following reasons, none of these claims provide a basis for federal habeas relief.

## III. DISCUSSION

### A.    Exhaustion

It is well established that petitioner must exhaust all available state remedies either on direct appeal or through a collateral attack of his conviction before he may seek a writ of habeas corpus in federal court.   See 28 U.S.C. § 2254(b); Bossett v. Walker, 41 F.3d

---

[5]Respondent has not challenged the timeliness of Kenneth Horn's Petition in its Answer or its Memorandum in opposition to the Petition.  As a general matter, a statute of limitations defense is forfeited if it is not raised in a respondent's answer to a federal habeas petition.  Day v. McDonough, __ U.S. __, 126 S. Ct. 1675, 1679-80, 164 L. Ed. 2d 376 (2006).  Because a statute of limitations defense is not a jurisdictional predicate, a federal habeas court is not obligated to raise a timeliness bar *sua sponte*.  Id. at 1681.  Just as "district judges have no obligation to act as counsel or paralegal to *pro se* litigants, . . . then, by the same token, they surely have no obligation to assist attorneys representing the State."  Id. at 1684 (internal citations and quotations omitted).  Consistent with this reasoning, this Court declines to review the timeliness of Kenneth Horn's petition *sua sponte*.

825, 828 (2d Cir.1994).  To exhaust his or her state remedies, a petitioner must present his or her constitutional claim to the highest state court from which a decision can be obtained.  See Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir. 2000) (citing Grey v. Hoke, 933 F.2d 117, 119 (2d Cir.1991)).  A claim is properly exhausted when the state court is fairly apprised of the claim's federal nature and of the factual and legal premises underlying the claim.  Grey, 933 F.2d at 119-20.

A review of Kenneth Horn's submissions to the New York appellate courts reveals that all of the claims raised in his federal habeas petition are fully exhausted.  See Daye v. Attorney General of New York, 696 F.2d 186, 194 (2d Cir. 1982) (en banc); Strogov v. Attorney General of New York, 191 F.3d 188, 191 (2d Cir. 1999).  Further, this Court finds that "[a]n extended discussion of the issues of exhaustion would be contrary to the interests of judicial economy as all of Petitioner's claims may be disposed of readily on the merits."  Sampson v. Conway, 386 F. Supp. 2d 173, 178-79 (W.D.N.Y. 2005).

**B.    Standard of Review**

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal habeas review of his or her conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court.  See 28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 375-76, 120 S. Ct. 1495, 1504, 146 L. Ed. 2d 389 (2000).

**C.      Merits of the Petition**

**1.      Sufficiency of the Evidence**

A petitioner challenging the sufficiency of the evidence supporting his or her conviction bears a "very heavy burden." Knapp v. Leonardo, 46 F. 3d 170, 178 (2d Cir. 1995).  To  resolve a sufficiency of the evidence challenge, a federal habeas court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002).  In making this determination, a reviewing court is not authorized to "'make its own subjective determination of guilt or innocence.'" Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999) (quoting Herrera v. Collins, 506 U.S. 390, 402, 113 S. Ct. 853, 861, 122 L. Ed. 2d 203 (1993)).  Rather, it must defer to the jury's "assessments of the weight of the evidence and the credibility of witnesses," Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996), and may only grant habeas relief if the petitioner has shown that, "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324; see also Herrera v. Collins, 506 U.S. 390, 401, 113 S. Ct. 853, 861, 122 L. Ed. 2d 203 (1993).

This Court finds that the evidence presented by the prosecution at trial, taken as a whole, is sufficient to establish that Kenneth Horn aided and abetted his brother in burglarizing Metter's Auto Parts and killing Mr. Burger in a manner evincing depraved indifference during the commission of that crime.  Petitioner argues that there were no eyewitnesses and no forensic evidence linking Kenneth Horn to the crime scene, and

therefore, that the evidence was insufficient to support his conviction.  However, "[g]uilt beyond a reasonable doubt can be established entirely by circumstantial evidence," and such evidence "must not be reviewed piecemeal but as a whole."  Moldonado, 86 F.3d at 35 (internal citations omitted).

In the present case, the evidence presented at trial, when viewed in a light most favorable to the prosecution, established the following:  (1) Mr. Luther heard Kenneth Horn telling Anthony how he chased and beat the victim during a junkyard robbery, and how Keith Horn "stuck him in the head with a screwdriver" (T. at 599); (2) Mr. Luther also overheard Kenneth Horn recount how he beat the victim and Keith Horn describe how th screwdriver went into the victim's brain "like butter" (T. at 605); (3) Keith and Kenneth Horn told their older brother, Kevin Horn, that they burglarized a garage, beat a man, stabbed him in the head, and put the body in the back of a van; (4) Keith Horn's blood was found on the outside of the van; (5) Mr. Berger, who was 6 feet tall and weighed approximately 180 pounds, was significantly larger that Keith Horn, who was 5 feet, 7 inches tall and 135 pounds, making it unlikely that Keith Horn could have overpowered the victim by himself; (6) nearly all of the windows in the van were broken, suggesting that the victim struggled with his attackers, or locked himself in the van in an effort to keep them out; (7) Keith Horn admitted that he killed Mr. Berger by stabbing him in the head with a screwdriver; (8) Mr. Berger was semi-conscious when he was discovered in the back of the van on Tuesday, May 28, 2006, and lived 3 more days until he died from a penetrating head wound that was approximately 4 inches deep and 1 inch wide; (9) numerous radiators and other auto parts were stolen from the junkyard, indicating that more than one person was involved in the robbery; (10) Keith Horn admitted that he committed nearly all of his prior crimes with the

assistance of other persons, including Kenneth Horn, who was his "best friend in the world" (T. at 777); (11) Kenneth Horn told police that he had never been to Metter's Auto Parts, and that he did not stab anyone, but the arresting officers denied ever advising Kenneth Horn how the victim had died; and (12) in May of 1996, Kenneth and Keith Horn lived together a short distance from Metter's Auto Parts, where the crimes took place.

As the Second Circuit has emphasized, in determining whether evidence is sufficient to support a verdict of guilty:

> [t]he task is to ascertain whether the record evidence on which the trier of fact relied was of sufficient quality to support the verdict . . . .  Since it is the trier of fact that weighs the evidence, determines credibility and draws inferences from historic to ultimate facts, a federal court, in analyzing sufficiency, should not "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." . . .  Instead, it stands in the shoes of the state trial court, and must consider whether a rational trier of fact could properly find or infer that the accused is guilty beyond a reasonable doubt.

Rapetti v. James, 784 F.2d 85, 91 (2d Cir. 1986) (internal citations omitted).  Based on the record evidence, this Court finds that it was reasonable for the jury to conclude that Kenneth Horn unlawfully entered the junkyard of Metter's Auto Parts to commit a crime and that he aided and abetted his brother in stabbing Mr. Berger, creating a grave risk of death, under circumstances evincing a depraved indifference to human life.  See N.Y. PENAL LAW §§ 140.20, 125.25 (2), (3).

Petitioner argues that Keith Horn testified that he was acting alone when he broke into Metter's Auto Parts and killed Mr. Berger, contrary to the testimony of Mr. Luther and Kevin Horn.  However, the jury apparently did not credit Keith Horn's testimony, relying

instead on the testimony of the prosecution witnesses.  It is the exclusive province of the jury to assess the credibility of witnesses, and the jury's determinations of credibility may not be revisited on federal habeas review.  See United States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993).  Put another way, a federal habeas court may not "reassess the fact specific credibility judgments by juries or . . . weigh conflicting testimony."  Vera v. Hanslmaier, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (internal citations and quotations omitted).  Based on the foregoing, Petitioner's sufficiency of the evidence claim does not afford a basis for habeas relief.

### 2.    Failure to Declare a Mistrial

Under New York law, a trial court may declare a mistrial upon a defendant's motion when "there occurs during the trial an error or legal defect in the proceedings . . . which is prejudicial to the defendant and deprives him of a fair trial."  N.Y. CRIM. PRO. LAW § 280.10(1).  "[T]he decision to grant or deny a motion for a mistrial is within the trial court's discretion" and a New York appellate court "will not interfere with this decision unless it amounts to an abuse of discretion."  People v. Ortiz, 54 N.Y.2d 288, 292 (1981); see also, e.g., Jones v. Strack, 99 Civ. 1270, 1999 WL 983871, at *4 & n.3 (S.D.N.Y. Oct. 29, 1999).

In the instant case, Petitioner claims that the trial court erred when it failed to grant a mistrial after Mr. Luther offered inadmissible hearsay regarding his involvement in Mr. Berger's death.  Specifically, Mr. Luther testified, "Anthony said to Ken, "You remember that guy you beat up in the junkyard, he died." (T. at 591).[6] Petitioner's claim is analogous to the contention that a trial court's erroneous evidentiary ruling violated a defendant's

---

[6]Apparently, the prosecutor had agreed not to elicit testimony from Mr. Luther about what Anthony had said during his conversation with Kenneth Horn, but the witness just "blurted it out."  (T. at 594)

constitutional right to a fair trial.   <u>See</u>, <u>e.g.</u>, <u>Wilson v. Senkowski</u>, No. 02 Civ. 0231(HB)(AJP), 2003 WL 21031975, at *12 (S.D.N.Y. May 7, 2003).   Habeas relief may be granted on such a claim only "'where [the] petitioner can show that the error deprived [him] of a *fundamentally fair* trial.'"  <u>Rosario v. Kuhlman</u>, 839 F.2d 918, 925 (2d Cir.1988) (emphasis in original).  Stated differently, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence is so extremely unfair that its admission violates fundamental conceptions of justice."  <u>Dunnigan</u> <u>v. Keane</u>, 137 F.3d 117, 125 (2d Cir. 1998).

Having reviewed the trial transcript, and the testimony of Mr. Luther in particular, this Court finds that the admission of Anthony's hearsay statement -- and the trial court's refusal to grant a mistrial based on that admission -- did not deprive Petitioner of a fundamentally fair trial.   As an initial matter, in the context of the entire conversation between Kenneth Korn and Anthony, the disputed statement was not unduly  prejudicial. In addition to the disputed statement, Mr. Luther testified without objection that Kenneth Horn told Anthony that he and Keith "went to the junkyard to get some things and they were confronted by somebody and they got into a fight," that they chased the man, and that Keith Horn "stuck him in the head with a screwdriver."  (T. at 597, 599).  Mr. Luther further testified that during a different conversation, Kenneth and Keith Horn discussed how they beat the victim, and how the screwdriver went into his brain "like butter."  (T. at 605).  This account was further corroborated by Kevin Horn, who related his brothers' admission that they robbed a garage, beat and stabbed a man, and covered him up in the back of a van.

A second factor that militated against granting a mistrial was the lack of bad faith on the part of the prosecutor.  In moving for a mistrial, defense counsel conceded that the

prosecutor told his witness not to mention the disputed statement, but the witness nevertheless "jumped the gun on him" and "blurted it out." (T. at 591, 594). Lastly, the trial court issued a curative instruction immediately following the hearsay statement, which: (1) admonished the jury that Mr. Luther's answer was not responsive, contained hearsay information from someone who would not be produced at trial, and thus, would not be examined or cross-examined; (2) directed the jury to disregard the answer as if it was never made; and (3) to strike the statement from their minds. (T. at 596). Given all of these circumstances, it cannot be said that the introduction of the hearsay statement and the failure to grant a mistrial on the basis of that admission was so extremely unfair as to violate fundamental concepts of justice. Accordingly, Petitioner's claim based on failure to grant a mistrial does not afford a basis for habeas relief.

### 3. Verdict is against the Manifest Weight of the Evidence

Petitioner claims that his conviction should be overturned because the jury's verdict is against the weight of the evidence. It is well established, however, that challenges to the weight of the evidence supporting a conviction are not cognizable on federal habeas review. Maldonado, 86 F.3d at 35. Unlike New York State appellate courts, federal habeas courts are not authorized to independently "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony." People v. Bleakley, 69 N.Y.2d 490, 495 (1987). As it is not cognizable on habeas review, Petitioner's weight-of-the-evidence claim must be dismissed.

### 4. Harsh and Excessive Sentence

Petitioner contends that two indeterminate sentences of 20 years to life on two charges of Murder in the Second Degree, to be served concurrently, is harsh and

excessive.  Generally, however, a petitioner's claim that a trial judge abused his discretion in sentencing is not subject to review by a habeas court.  See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977) (citing Townsend v. Burke, 334 U.S. 736, 741, 68 S. Ct. 1252, 1255, 92 L. Ed. 1690 (1948) (holding that the severity of a sentence that is within the statutory limits "would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.")).  As the Second Circuit has held, "[n]o federal constitutional issue is presented where, as here, the sentence falls within the range prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).  Because Petitioner's sentence does not fall outside of the range authorized by New York's Penal Law, his claim challenging the severity of that sentence is not cognizable on federal habeas review and must be dismissed.  See, e.g., Burden v. Filion, 421 F. Supp. 2d 581, 588 (W.D.N.Y. 2006).

## IV.  CONCLUSION

For the foregoing reasons, Petitioner Kenneth Horn's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is denied, and the Petition is dismissed.  Moreover, because Petitioner has failed to make a substantial showing that he was denied a constitutional right, this Court will not issue a certificate of appealability under 28 U.S.C. § 2253.

## V.  ORDERS

IT HEREBY IS ORDERED, that Kenneth Horn's Petition for a Writ of Habeas Corpus (Docket No. 1) is DENIED.

FURTHER, that a Certificate of Appealability under 28 U.S.C. § 2253 shall not be issued.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.


SO ORDERED.


Dated:   September 27, 2006
         Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge